John A. E. Davidson, Christopher J. Davidson, DAVIDSON & DAVIDSON, APLC, 2901 Independence Street, Suite 201, Metairie, LA 70006, COUNSEL FOR PLAINTIFF/APPELLEE
Eric O. Person, 1539 Jackson Avenue, Suite 100, New Orleans, LA 70130, COUNSEL FOR DEFENDANT/APPELLANT
(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Dale N. Atkins )
Judge Dale N. Atkins *485 Defendant-Appellant, Tiffany A. Romano ("Romano"), challenges the district court's order granting summary judgment in favor of Plaintiff-Appellee, Judy Barrie ("Barrie"), and declaring Barrie the owner of the property located at 122 16th Street in New Orleans. For the reasons that follow, we find that the judgment of the district court should be reversed.
FACTS AND PROCEDURAL HISTORY
This matter concerns ownership of the property located at 122 16th Street in New Orleans ("the property"), which became blighted in the aftermath of Hurricane Katrina. Romano, the record owner, had moved to Dallas, Texas around the time of the hurricane, leaving the property unoccupied. Following administrative hearings, the property was adjudicated a public nuisance due to blight on two occasions, on July 22, 2009[1] and December 6, 2011. Notices of the hearings and judgments were sent to Romano at 5930 Monticello Avenue in Dallas, Texas.
On December 13, 2011, the property was posted on the City of New Orleans ("City") Blight Status website. In May 2012, Barrie filed an Affidavit of Intent to Possess under La. R.S. 9:5633(2), which provides for three-year acquisitive prescription of blighted properties if various statutory requirements are met. Over the next six months, Barrie attempted to comply with the various filing and posting requirements of La. R.S. 9:5633, took corporeal possession, and on November 5, 2012, Barrie applied to the City for a demolition permit for the property. The City denied the permit based on its practice of not granting demolition permits for non-title owners. On December 6, 2012, Barrie filed a Mandamus Petition against the City and Romano, seeking an order directing the City to issue a demolition permit to Barrie. The petition also included the following language:
Petitioner hereby seek[s] to serve Tiffany A. Romano with notice of these proceedings in order that she might present evidence that the property was not declared blighted by the City of New Orleans on July 22, 2009, and further to assert any opposition she might have to the demolition of said property or the recognition of Judy Barrie as sole owner of the property upon completion of said demolition.
Petition, ¶ VII.
On March 3, 2013, long-arm service of the citation and mandamus petition was sent via certified mail to Romano at the Monticello address, but it was returned unclaimed.
A hearing on the mandamus petition was held on July 26, 2013. The City opposed the mandamus arguing that Barrie had not complied with the requirements of La. R.S. 9:5633, and citing its practice of not issuing demolition permits to non-title owners such as Barrie. During the court's colloquy with counsel, the district judge specifically asked whether demolition was required to ameliorate a public safety issue (to which Barrie's counsel responded in the affirmative), and if Barrie would be willing to indemnify the City for any damages *486 claimed by Romano (also eliciting an affirmative response). On August 7, 2013, the district court entered its judgment directing the issuance of mandamus ordering the City to issue the demolition permit. The district court specifically included language requiring Barrie to indemnify the City for any damage claims brought by Romano. On October 30, 2013, the City issued a demolition permit, and on November 13, 2013, the City issued a certificate of completion for the permitted work.
On December 12, 2013, Barrie filed her First Supplemental and Amending Petition to Quiet Title, Injunction and Appointment of Curator Ad Hoc. A curator was appointed on December 13, 2013. Subsequently, the curator located Romano who retained counsel. Through her attorney, Romano filed an Answer and Reconventional Demand on February 4, 2014. In her pleadings, Romano alleged, inter alia , that she was entitled to damages because Barrie had not complied with the requirements of La. R.S. 9:5633 and unlawfully demolished the improvements to the property. Barrie filed an Answer and Reconventional Demand on March 27, 2014, and on July 7, 2017, Barrie filed an Exception of Res Judicata, arguing that the issues raised in Romano's reconventional demand were barred by the judgment in the first (mandamus) suit. Following a hearing on the res judicata issue, the district court granted summary judgment quieting title and naming Barrie the sole owner, based on its finding that res judicata barred Romano's claims. This timely devolutive appeal followed.
ASSIGNMENTS OF ERROR
Romano asserts that the district court erred in the following particulars: (1) ruling that the issue of ownership and judgment was barred by res judicata, because the August 7, 2013 mandamus judgment was limited to the issue of the demolition permit; (2) ruling that the August 7, 2013 Judgment was res judicata on the issue of whether Barrie had complied with all requirements of La. R.S. 9:5633, when Louisiana R.S. 9:5633 was not mentioned in that judgment; (3) ruling that the allegations that Barrie did not comply with La. R.S. 9:5633 were first raised in 2017, when those claims were raised in Romano's Answer and Reconventional Demand filed on February 4, 2014; and (4) ruling that the appointment of a curator ad hoc was not necessary under La. R.S. 13:3204(B), because Barrie did not prove that notice required by due process was afforded to Romano. We address each individually; because we consider it a threshold issue, we address the due process/notice question first.
DISCUSSION
The Long-Arm Service on Romano Satisfied the Requirements of Due Process
In Romano's fourth assignment of error, she argues that because she did not receive adequate notice of the mandamus suit, the district court erred in failing to appoint a curator ad hoc to represent her interests in the mandamus proceeding. This issue raises a question of law, and thus we review it de novo . Durio v. Horace Mann Ins. Co. , 2011-0084, p. 14 (La. 10/25/11), 74 So.3d 1159, 1168.
At the time Barrie's mandamus action was filed, Romano was a resident of Texas. However, her ownership of real property in Louisiana made her subject to personal jurisdiction here.[2] Thus, under Louisiana's *487 long-arm statute, service by certified mail was authorized.[3] "Service of process so made has the same legal force and validity as personal service on the defendant in this state." La. R.S. 13:3204(C). However,
[n]o preliminary default or final default judgment may be rendered against the defendant and no hearing may be held on a contradictory motion, rule to show cause, or other summary proceeding ... until thirty days after the filing in the record of the affidavit of the individual who has done any of the following:
(1) Mailed the process to the defendant, showing that it was enclosed in an envelope properly addressed to the defendant, with sufficient postage affixed, and the date it was deposited in the United States mail, to which shall be attached the return receipt of the defendant.
La. R.S. 13:3205.
Finally, "[i]f service of process cannot be made on the nonresident by registered or certified mail or by actual delivery, the court shall order that service of process be made on an attorney at law appointed to represent the defendant pursuant to Code of Civil Procedure Article 5091." La. R.S. 13:3204(B).
The record reflects that all of the requirements for valid long-arm service were met. The record includes the affidavit of long-arm service required by § 3205, executed by plaintiff's counsel's secretary, personally attesting that she mailed the citation and petition via certified mail to Romano at 5930 Montecello[4] Avenue in Dallas, Texas, as well as a copy of the returned letter marked unclaimed by the U.S. Post Office. Romano has never denied that this was her correct address at all relevant times, and acknowledged in her deposition that it has been her correct mailing address since 2005.[5] Nevertheless, Romano argues that because the certified letter was unclaimed, she never received it and valid service was not effectuated. She further argues that because she was unavailable, a curator ad hoc should have been appointed to represent her interests in the mandamus suit.
Case law is clear that a defendant cannot evade service by refusing to accept properly addressed mail. "It is well established that a party may not defeat service by merely refusing to accept the letter containing the citation." Harold A. Asher, CPA, LLC v. Haik , 2012-0771, p. 9 (La. App. 4 Cir. 4/10/13), 116 So.3d 720, 726-27 (quoting Dean v. Waters , 95-2352, 95-2365, p. 7 (La. App. 4 Cir. 12/14/95), 667 So.2d 1137, 1141 ). When there has been a refusal to claim certified mail containing a citation, courts have found service has nevertheless been properly effectuated when an affidavit prescribed by La. R.S. 13:3205 has been properly executed and filed into the record. Id. (citations omitted). "To allow a defendant to defeat service of process by refusing to claim a certified letter at the post office would *488 make a mockery of R.S. 13:3204 and render it completely ineffective." McFarland v. Dippel , 99-0584, p. 6 (La. App. 1 Cir. 3/31/00), 756 So.2d 618, 621-22 (citations omitted). Accordingly, we find that in this case Louisiana's long-arm service requirements have been satisfied and sufficient service was made on Romano.
As a result, with respect to Romano's contention that the district court was required to appoint an attorney to represent her interests, we disagree. Louisiana Code of Civil Procedure article 5091 provides in pertinent part:
The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:
(1) It has jurisdiction over the person or property of the defendant, or over the status involved, and the defendant is:
(a) A nonresident or absentee who has not been served with process, either personally or through an agent for the service of process, and who has not waived objection to jurisdiction.
La. C.C. P. art. 5091(A).
As discussed above, Romano was in fact served with process. Accordingly, the district court was not required to appoint an attorney to represent Romano, and her assignment of error that she was not afforded adequate due process is without merit.
The mandamus judgment was limited to the issue of the demolition permit.
In her first assignment of error, Romano contends that the district court erred in ruling that the issue of ownership and judgment was barred by res judicata, because the August 7, 2013 mandamus judgment was limited to the issue of the demolition permit, and did not have preclusive effect on the other issues raised in the subsequent litigation. We find this assignment of error has merit.
The res judicata effect of a prior judgment is a question of law that is reviewed de novo . In re Succession of Horrell , 2011-0194, p. 11 (La. App. 4 Cir. 11/30/11), 79 So.3d 1162, 1169. With respect to issue preclusion, our law provides: "A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." La. C.C.P. art. 425. Our law of res judicata states:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
La. R.S. 13:4231.
Discussing this provision, the Louisiana Supreme Court has explained that the following *489 five elements "must be satisfied for a finding that a second action is precluded by res judicata: (1) the [original] judgment is valid; (2) the [original] judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation." Chevron U.S.A., Inc. v. State , 2007-2469 (La. 9/8/08), 993 So.2d 187, 194 (quoting Burguieres v. Pollingue , 2002-1385, p. 7 (La. 2/25/03), 843 So.2d 1049, 1053 ). The " 'chief inquiry' ... [is] whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action." Id.
In the present case, the first four elements are present. With respect to the validity of the final judgment, Romano's challenge to the judgment's validity based on her contention that she did not receive notice is unfounded, as set forth above. Second, the original judgment is final. It was entered on August 7, 2013, and was never directly attacked-no appeal, request for new trial, or suit to annul the judgment was ever filed by Romano. Third, there is identity of parties: both suits name Romano and the City as defendants. Fourth, Romano's causes of action in the Reconventional Demand, filed in February 2014, arose at the time Barrie took corporeal possession of the property, in October 2012.
Thus, we must conduct the "chief task" of determining whether the causes of action asserted in this case arose out of the same transaction or occurrence that was the subject matter of the mandamus suit.
In the original mandamus suit, Barrie sued the City and Romano, alleging that the property was blighted and subject to application of La. R.S. 9:5633 and would be demolished. The mandamus petition also advised Romano "to assert any opposition she might have to the demolition of said property or the recognition of Judy Barrie as the sole owner of the property upon completion of the demolition." Following a hearing, the judgment directing issuance of mandamus ordered, inter alia , "that there be judgment in favor of Judy Barrie and against the City of New Orleans and Tiffany A. Romano requiring the issuance of a permit to Judy Barrie for the demolition of the improvements located on [the] property ...." It further ordered "that Judy Barrie indemnify the City of New Orleans from any judgment rendered in favor of Tiffany A. Romano for damages resulting from the issuance of said demolition permit."
Barrie argues that because the district court issued the mandamus directing the City to issue the permit, that ruling necessarily entailed acceptance by the trial court of Barrie's entitlement to proceed under La. R.S. 9:5633. Barrie also claims that the district court rejected the City's argument that Barrie had not adequately complied with the requirements of La. R.S. 9:5633. Put another way, Barrie contends that the only way the court could decide to grant the mandamus directing the City to issue the demolition permit was to also find that Barrie had validly complied with all the requirements of La. R.S. 9:5633. We disagree.
Our close reading of the transcript of the mandamus hearing reflects that the proceeding was limited to the question of the issuance of the demolition permit. The mandamus ordering issuance of the demolition permit was premised on the fact that the property had been adjudicated a public nuisance, and concern that it presented a safety issue. Moreover, apparently crediting the City's argument, supported by the *490 record,[6] that strict compliance with La. R.S. 9:5633 had not occurred, the order was granted specifically contingent upon Barrie indemnifying the City from any judgment in favor of Romano resulting from the issuance of the demolition permit. The inclusion of this provision could only have been necessitated by the district court's belief that Romano did have a potential claim related to the issuance of the demolition permit, which was not litigated or resolved in the mandamus proceeding.
"[A] final judgment has the authority of res judicata only as to those issues presented in the pleading and conclusively adjudicated by the court." Ins. Co. of N. Am. v. Louisiana Power & Light Co., 2008-1315, p. 6 (La. App. 4 Cir. 3/4/09), 10 So.3d 264, 268. As well, the doctrine of res judicata is stricti juris and any doubt concerning its applicability is resolved against its application. Id. at 7, 10 So.3d at 264, citing Kelty v. Brumfield , 93-1142, p. 7 (La. 2/25/94), 633 So.2d 1210, 1215. We find that the clear import of the district judge's colloquy at the mandamus hearing, and the specific language of the judgment, demonstrate that the mandamus proceeding was limited to the appropriateness of the demolition permit, and the issues of statutory compliance or ownership were not conclusively adjudicated by the court.
The mandamus judgment did not address the requirements of Louisiana Revised Statute 9:5633.
In her second assignment of error, Romano argues that the district court erred in ruling that the August 7, 2013 Judgment was res judicata on the issue of whether Barrie had complied with all requirements of La. R.S. 9:5633, when La. R.S. 9:5633 was not mentioned in that judgment. We agree.
As set forth above, the transcript of the mandamus hearing makes clear that it was directed to the issue of whether a demolition permit should be issued. The only other topic addressed was the district court's insistence that Barrie indemnify the City for any subsequent judgment in favor of Romano, a fact which undermines any contention that the district court considered Romano's existing causes of action to be resolved in that proceeding. Moreover, as pointed out by Romano, a review of the judgment reveals that it makes no mention of La. R.S. 9:5633. Accordingly, this assignment of error is well-founded.
Romano's claim that Barrie did not comply with Louisiana Revised Statute 9:5633 was raised in her Reconventional Demand filed February 4, 2014.
In her third assignment of error, Romano asserts that the district court erred in ruling that the allegations that Barrie did not comply with La. R.S. 9:5633 were first raised in 2017, when those claims were raised in Romano's Answer and Reconventional Demand filed on February 4, 2014. We pretermit this assignment of error because our review of the record does not reflect such a ruling by the district court; however, we do note that Romano challenged Barrie's failure to comply with the requirements of La. R.S. 9:5633 in her *491 Reconventional Demand filed February 4, 2014.
Mandamus is not the proper vehicle for a Quiet Title action.
In addition to our finding of the validity of the assignments of error discussed above, we also note that the issues that Barrie seeks to have precluded by the mandamus judgment were not susceptible to resolution in a mandamus proceeding. "A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice ...." La. C.C.P. art. 3862(A). It "may be directed to a public officer to compel the performance of a ministerial duty required by law ...." La. C.C.P. art. 3863.
A review of the petition reflects that the mandamus relief sought was an order directing the City to perform a non-discretionary, ministerial duty required by law-the issuance of the demolition permit based on the public nuisance/blight judgment. In that vein, Barrie argued that while the City had discretion to determine whether a property was blighted, once that determination was made, it had no discretion to deny a demolition permit. However, with respect to Romano, the mandamus petition sought "to serve [her] with notice of these proceedings in order that she might present evidence that the property was not declared blighted by the City of New Orleans on July 22, 2009, and further to assert any opposition she might have to the demolition of said property or the recognition of Judy Barrie as sole owner of the property upon completion of said demolition." Essentially, this directive contained within the mandamus petition seeks a declaratory judgment, or judgment quieting title, and appears to be an attempt to roll a quiet title action against Romano into the mandamus action directed to the City.
A quiet title action recognizing Barrie as sole owner is akin to a declaratory judgment, which must be brought in an ordinary proceeding. See La. C.C. P. art 851. It is not the proper subject of a mandamus petition. A suit for mandamus, which may be brought by summary proceeding, cannot be cumulated with a suit for declaratory judgment, which must be brought by ordinary proceeding. Citizens Organized for Sensible Taxation (C.O.S.T.) v. St. Landry Parish School Bd. , 528 So.2d 1048, 1053 (La. App. 3rd Cir. 1988). Thus, in addition to finding that the mandamus judgment was limited by its terms to the appropriateness of the demolition permit, we note that the other issues Barrie contends were subsumed in that judgment were not amenable to adjudication in a mandamus proceeding. Accordingly, the mandamus judgment does not have any preclusive effect on the causes of action raised in Romano's reconventional demand.
For the foregoing reasons, we find that the district court erred in sustaining Barrie's exception of res judicata and granting summary judgment. Accordingly, this matter is reversed and remanded.
REVERSED AND REMANDED

The record reflects that the 2009 judgment was rescinded in October 2009. However, the cancellation of this judgment was not filed of record until December 5, 2013.

A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
...
(5) Having an interest in, using or possessing a real right on immovable property in this state.
La. R.S. 13:3201(A).

"In a suit under R.S. 13:3201, a certified copy of the citation .... shall be sent by counsel for the plaintiff ... to the defendant by registered or certified mail ... when the person to be served is located outside of this state ...." La. R.S. 13:3204(A).

Romano's street in Dallas is spelled Monticello in some places in the record and Montecello in others. There is no assertion anywhere in the record that a misspelling of the street name resulted in difficulty in delivering Romano's mail.

In addition, we note that at the mandamus hearing, counsel specifically argued the validity of the service which was accepted by the trial court.

For instance, the statute requires that within one week of Barrie's Affidavit of Intent to Possess being filed, she was required to send it with the certificate of proof via certified mail to Romano. La. R.S. 9:5633(A)(3). The record reflects that the affidavit was filed May 22, 2012, and not mailed until July 23, 2012. An Amended Affidavit of Intent was filed on July 31, 2012, which recites it is an amendment to the affidavit filed on June 22, 2012, a month later than the original affidavit was actually filed. Presumably, this is a typographical error. The record does not appear to include a transmittal letter, return receipt, or unclaimed receipt for a mailing of the amended affidavit to Romano.